May it please the Court, good morning. Jason Carr, appearing on behalf of Appellant Michael Carnicle. It's taken us quite a while to reach this point. Mr. Carnicle was sentenced back in May of 2002, and in some strong measure this case is about the detour. During Carnicle's original appeal, he raised a very vigorous claim that the government did not comply with their obligations under the three plea agreements. I filed an opening brief, and the government came to me and Mr. Carnicle and proffered a resolution. The resolution was that they would file a Rule 35 motion, get us back to the district court, and remedy their initial failure to give Carnicle consideration for all the help that he's given the government in an extremely dangerous situation. So we have an individual who was involved in over 100 events with organized crime criminals. And so one thing I'd like the Court to keep in mind, this is not your average case. This is a case dealing with an individual who cooperated with the government extensively against organized crime families, primarily on the East Coast. And just as a little aside, this Court did enter an order sealing this matter, and if the Court does issue a decision in this matter, I'd like that decision to remain sealed. Mr. Carnicle's ---- How about this argument? Well, the argument, Your Honor, is fairly ---- I'm not as concerned as somebody who would have axed or grinded Mr. Carnicle would be here. Maybe we could have the marshals seize him. That's quite a reasonable argument. There have been many tape recordings. But, Your Honor, the ---- Your Honor, my primary concern is there not be a published decision in this matter because of the fact or if there is a John Doe is substituted, because he is still in witness protection. And when I ---- when I have to contact Mr. Carnicle, I go through his probation officer, because they have him secreted away in an undisclosed location. But at any rate ---- But so you're moving to change the caption to Doe? Well, if it's published, this Court did enter a previous order sealing this matter, and I would just ask that order still be given to Federal. I'm not ---- I'm not quite sure how that works when you hear a case. It's a ---- I thought about that, Your Honor, about whether we should try to seal this, and I just made a determination that the risk was not helpful enough for the inconvenience. But it's a far different cry from something that enters into a Federal report. But what I would ask, and what would happen basically is we went back to the Rule 35. Okay. We have unpublished dispositions, isn't it? Yeah. And that should remain that way. Correct. The ---- when we went back to the Rule 35, the government addressed all our sentiments. Let me ask. Is your remedy that you're seeking here to remand for a new hearing on restitution? Correct, Your Honor. And that is exactly what all we're asking, all this appeal about now is restitution. Yes. It has nothing to do with sentencing. I'm just out of curiosity, because nobody's raised it, but I'm curious. When it goes back, is the government free then to provide a list of victims? They'll never be able to do it. They've admitted already that twice now, at the original sentencing and then their amended motion, response to my motion to recall the mandate, that they'll never be able to come up with a victim list. So what's the point of sending it back? Well, we send it back to restitution or it will be vacated, at least to the extent that we have agreed that a certain amount of restitution should be imposed. The Utah case. The Utah case, exactly. And the other two, your position is that there can be no restitution. Well, in the Michigan case, the plea agreement specifically says there are no identifiable victims and restitution should not be imposed. And that's the argument number one, is that restitution order should be vacated. And there is some confusion in the record that the government makes much ado about in their brief in the original sentencing about the defense counsel was mixing up the Utah and the Michigan agreements. And if you read that transcript carefully, you'll notice that neither the government, defense counsel, nor the court was getting the agreements straight. But those can be straight. Now, the Devada one, which is all the money, right? That's where all the money is. $2.5 million. You said if we read it carefully. I want to let you know that we always do read it. I believe that, Your Honor. I believe that with all my heart. But I just want to make the point, though, that the parties are confused. A rhetorical point. Yes. Yes. Well, the parties are confused. Both the government was saying at the original sentencing, well, he agreed to these amounts in the agreements, that he stipulated the restitution amounts. It's completely false. None of the agreements say that. Probations tell the court, well, that's not true. The agreements don't say that. So the government didn't have the terms correct. Defense counsel was mixing them up. The court was trying to keep it all straight. It's a confusing case. I mean, they're interlocking plea agreements from three different districts. It's no wonder that people are confused. But the Michigan restitution should certainly be thrown out. With Nevada, the government came in at sentencing and said, we have we sent out questionnaires. They're put in a box. We lost the box. We aren't going to ever be able to come up with a victim list, which makes imposing restitution a problem, because not only has the government not proved any actual loss to any identifiable victim, but what are they going to do with the money? Who do they give the money to? They have no idea who these people are. And let's keep in mind that this is a securities case, and this isn't a case of let's issue fraudulent shares that have no value at all, and this is blatant fraud. This was a mechanism to take advantage of a loophole in SEC rules to issue more stock, but the underlying companies are viable. And to this day, there's three major companies. There's Chariot, Embrace, and SureQuest. Those companies are viable companies, and their stocks presumably have some value. And to this day, as far as I know, they're still viable companies. They're all traded on NASDAQ. The government has never come forward with any evidence to this day saying that these shares have no residual value. I mean, they're not saying that these shares are completely worthless. I don't – there's no way that that could be the case. But anyway, the main point is that there is no list of victims, and you say the government will never be able to produce a list of victims, and without a list of victims, you can't award restitution. I'm not saying the government has said it, that we cannot come up with a list of victims. All right. A problem that you may have, if we do send this back for resentencing, because the restitution order was invalid – let's just assume that – could the district court judge increase the fine? Well, I would have an argument. By the amount of the restitution order that he ordered? I would have an argument, first of all, against imposing the fine when the plea agreement says, you know, that the parties, you know, stipulate that no fine should be imposed. Second of all, I'd have the strong argument at this stage that that would be vindictive. There's a presumption of vindictiveness that if you win a case on appeal, that the court can – the district court cannot impose an additional sanction unless they can come up with objective reasons for that. And so I am protected strongly by the presumption of vindictiveness. I mean, it is vindictive. Oh, we can't prove restitution, so let's give this guy a huge fine. That's, to me – Somebody suggested that originally, you know, it's not too easy to do restitution. Why don't you give him a fine? And the judge said, no, I don't want to give him a fine. Exactly. And the judge said because the plea agreement said that – But that's when he thought he could have restitution. All right. Well, that's not – that's – in any event, you want to remand him. The rest – and the restitution statute doesn't say, well, if he can't prove it, impose a fine. It says if he can't prove it, don't impose restitution. Why don't we hear what the government has to say? And we'll save your time for rebuttal, if you need any. Very well. Good morning, Your Honors. It pleads the Court, John Drennan for the United States. We think this appeal should be summarily dismissed. We believe that the Rule 35 hearing was within the law, and this appeal can only be dismissed. As far as I'm concerned, Rule 35 issues – that is, substantial assistance issues – Let me just make clear where we are. Am I correct that you're making a jurisdictional argument? Yes, Your Honor. That if we reject the jurisdictional argument, you then agree the appropriate remedy is to remand? No, Your Honor. We would think – Well, the heading – you have an argument, A, the government court does not have jurisdiction, B, the court doesn't have jurisdiction, C, assuming the district court had jurisdiction to entertain the challenge to the restitution orders, this court should remand for further proceedings? That's assuming there's jurisdiction. That's what I said. Oh, I'm sorry. Assuming we reject your jurisdictional argument, then we should remand. Yes. Okay. Probably the appropriate remedy would be to dismiss this appeal, recall the case, allow that to be a full remand so that we could explore the issue of victim identification. Counsel, the difficulty that I have with your position, you know that the restitution order was invalid. No, Your Honor. Under 18 U.S.C. You're agreeing to send it back to change it. And if you're doing that, you know something's wrong with it. Right? Your Honor, under 18 U.S.C. 3663b3, the parties are allowed to stipulate to the restitution amount. It's clear in the statute. But you want us to remand it. Because we need to explore the ineffective assistance claims and we need to explore the Michigan claims. If you knew that it was wrong, why didn't you tell the district court judge to correct it? Why do we have to go through all these processes? Your Honor, it does appear that the government and appellant did not understand, at least with respect to the Nevada order, that there would be a problem. There is no problem with respect to the Michigan order. The Michigan order specifically sets out that loss will be considered the restitution amount and specifically agrees to a range between $1 million and $316,000. Wasn't that for purposes of the Guidelines? No, that wasn't for purposes of the Guidelines. That was separate from the Guidelines calculation. For purposes of the Guidelines, the amount, at least for the Nevada judgment, was $316,000. I thought you were referencing the Michigan judgment. I was. And then I was switching over to the Guidelines. You switched to Nevada. Right. The Guidelines. But as I said, it was not for the purposes of the Guidelines in the Michigan order. And then I was expounding on what was for the purposes of the Guidelines. That showed up under the Michigan, rather than Nevada, restitution order. But a minute ago you said something about you need to send this back for further proceeding so you could explore ineffective assistance. What's that about? The dismissal of the original. Why does that relate to whether restitution was proper or not? The dismissal. Well, because the proper remedy here is to dismiss this appeal and for an appellant to file a writ of quorum novis. Right. And the defaults would be dismissed by the ineffective assistance of counsel. That 2255 presumably is not available because restitution is not cognizable  That's correct. So a writ of quorum novis would be the appropriate remedy. Are you from the Justice Department? Yes, I am, Your Honor. Well, how come that happened, rather than the U.S. Attorney's Office? Well, my colleague, Mark Osborne, who was doing the appeal, has moved on to another office. He's moved on to the U.S. Attorney's Office in Miami. He and his wife both got positions there and moved a few weeks ago. So this came to me in the normal course. You can have the speaker. Oh, excuse me. How did it come to your office? Not you individually. Oh, excuse me. It came to my office simply because the AUSA on the case, Kathleen Bliss, had just come to the Nevada office, was very busy, didn't have enough time to handle this case, and so asked us to do it. So, again, in the normal course, we often take complicated overflow cases that AUSAs don't have time to deal with. Let me see if I understand your Rule 35 argument. Your argument is that when it went back, when he stipulated to dismiss the original appeal, and you would proceed on a Rule 35 motion, that the only thing that happened there was the district court was allowed to just revisit the sentence, not the restitution. That's correct. Is that your argument? That is. And, of course, he could have said, well But what authority do you have for that? Your Honor, I'm just looking at the advisory notes to Rule 35, and they make it clear that there are two issues. There's finality and orderly appeals. Let me ask you this. Did the district court judge enter a new judgment? I believe it entered what it called an amended judgment. Isn't that a new judgment? I would think that would count as a new judgment for purposes of, for jurisdictional purposes. The basic problem is an asymmetry built into the interpretation of the rule that the appellant is asking you to adopt. That is, there's an asymmetry in appeal rights between defendants who have their Rule 35b motions granted and those that don't. Those that do, surprisingly, get two bites of the sentencing apple. That is, there are two times at which they can attack any of the sentence. The government is in that position also. We can twice attack all the sentencing issues. Those defendants who don't have their motions granted only get to attack their sentence once on appeal. This asymmetry surely would have been spoken to by, in the advisory notes. Let me understand. There was an appeal. There was an appeal. That's right. Initially, there was an appeal. That's correct. And it would have been a proper appeal. They could have raised the restitution issue in that appeal. Yeah. Certainly they could have raised that. They did. Instead, they had a Rule 35 motion just to change something else, not restitution, but to consider the sentence. Yeah. And they then lost it. There were two separate issues in the first appeal, the Rule 35. Right. But instead of proceeding with the first appeal, it went back so the judge could straighten out the sentence. It went back solely to straighten out the Rule 35 issues. Yes. And that got straightened out. Right. And then what? Then they lost their right to appeal the restitution? No. At this point, what they need to do is file a petition for a writ of quorum notice. That's different. That's not an appeal. I said they had a right to appeal the restitution. Yes. By dismissing the appeal, they lost their appeal. By going on a Rule 35 motion so the judge could correct the sentence if the government wanted to correct. Yes. They had a right. They forfeited their right to appeal restitution. That's right. They had a right to appeal. In fact, they did appeal. Then they dismissed their appeal. So they straightforwardly lost their appeal. That's correct. Now they've got to proceed on a writ. And that you find satisfactory. What are your configurations? There is certainly a remedy here which they can go through. Recalling the mandate is supposed to be some sort of last resort measure. We're not at the last resort yet. There is a writ procedure that goes through it. It's a nice, great, simple appeal. And I must say, I don't see any problem with it. Well, the problem is they dismissed their appeal. Yes. Wasn't that at the government's suggestion? No, it was not. There's simply nothing to this. Did they just voluntarily dismiss their appeal? I think it was an oversight. It's like the risk of losing all their appeal rights. In Appellant's Carnicle's affidavit to the court, he says he's giving up all issues and appeals by dismissing that appeal. Then, two weeks later, an affidavit shows up saying, oh, far from dismissing all my issues and appeals. In fact, I've got a deal to preserve all these issues and appeals. It just doesn't stack. The Rule 35 motion was filed in October. The motion to dismiss wasn't filed until December. Who filed the Rule 35 motion? The government filed, of course. None of the ‑‑ if you read the Rule 35 ‑‑ But there wasn't anything to appeal from, as long as the government was changing the sentence, was there? No, of course there was. There was the restitution issue. Well, no, but you couldn't appeal the whole sentence. You don't have to appeal the whole sentence. They could have simply said, look, we're not relying on the first part of the brief about Rule 35 because that's not an issue anymore. So we're going to appeal restitution now, and then later we're going to appeal the rest of the sentence. That's how it usually works. After a restitution order has been entered, the defendant at that point has a chance to appeal the substantial subsistence. Now, often that doesn't work out because there's often not jurisdiction for this court to review discretionary matters, but nevertheless ‑‑ Well, you can't have two judgments. Well, you can have a judgment that amends a judgment, however. You can? Yeah. That's what happened in this case. So there's two judgments. It's from your perspective. No, no, no. There's two judgments in this case? The original judgment and then the amended judgment? No, as we've been construing this, my time's up, but as we've been construing this, the second judgment superseded the first judgment. So there aren't two. But the final judgment. It is the final. That had restitution in it. Yes. So what would they be appealing? The first ‑‑ the second one. Let us say we followed your course. They're now appealing the restitution order, but that judgment's gone. That's no longer there by the time they get to oral argument. No. The restitution order has been entered, and that is in the second judgment. So they're ‑‑ It is in the second judgment. Yes. Yes. So if they had appealed the first judgment and they got here today, somebody from the government, if he had any sense, would say, what are we doing here? That judgment's gone. There's an amended judgment. Your Honor, I'm sure we could have worked that out. I don't think we could have worked anything out the way they're listening to your argument. I'm not sure where your ‑‑ where your puzzlement is, but it would have been certain. Puzzlement is why we don't just take a nice, simple, there's one judgment, as Judge Breyer said. That judgment was entered into after the Rule 35 motion. They're now trying to appeal that judgment. I don't see what the problem is. The problem is there are two appeals. He appealed the judgment and he dismissed his judgment. I mean, to dismiss his appeal. But he dismissed an appeal from a judgment that no longer exists. It was amended. That's true. It's exactly the same judgment as the amended judgment. Okay. All right. Well, I think we see what the issue is. Yeah. I'm not sure of the answer we agree on, but I think we agree on the issue. Yes. Thank you, Your Honor. Listen, it's fair in mind that during the first appeal, my client is in custody. The government comes to me and says, we can work out this sentencing. And my job at that time is to get him in the court as soon as possible. Because, indeed, once we got the Rule 35 sentencing, my client gets essentially time served. Under government's theory, I'm supposed to take this all the way up and litigate it for another year while my client waits in prison?  The other option I can think of is to take the case to the Supreme Court. And I guess that I could have done is to stay the original appeal and go back for the Rule 35. But then we have the problem that the Court has recognized, which is what judgment am I appealing from? In the original – after the original sentencing, there were not one judgment but three. The Court entered three separate judgments for each different case, because there are three cases. After the Rule 35 resentencing, the Court consolidated all the judgments, called it an amended judgment, put the restitution order in the amended judgment. And that is the judgment that I appealed from to get to me. All right. Thank you, counsel. Now, I just want to say this, and I'll sit down, is that the Court agrees with the government that there's a jurisdictional problem. Elegant solution is just to recall the mandate from the original appeal on then jurisdictional problems. We've tried that in one case, recalling the mandate. Thank you. Thank you very much. Case just arguably submitted. The Court will take a brief morning recess. All rise. We'll begin the recess. I'm just going to get rid of economics, man. Do I have another one, actually? Yes, you do. Who's he at? All right. Which one is he going to be?
judges: Ferguson, Reinhardt, Paez